Good morning, Your Honors. My name is Steve Dawson, and I represent Jennifer Mojica and Julio Aranda, the insureds of State Farm. Claims below appellants here. I'd like to attempt to reserve five minutes for rebuttal. On the issue of insurance coverage for these insureds, water loss. There are material facts in dispute over the loss that impacts whether there's coverage. The parties also dispute the correct interpretation and application of the insurance policy exclusion that State Farm relied upon. And I'd like to start talking about the policy language before talking about some of the facts. So the policy for dwelling is considered all risk coverage. Meaning that if there's accidental direct physical loss to the property, it's covered. Unless there is an exclusion specifically addressing something that is going to be carved out of that. And that's under the section 1, losses not insured. So the exclusion that we're really debating about here is this continuous or repeated seepage or leakage exclusion. And though obviously Your Honors are fully aware of the rules of insurance construction, I do think it's important to know that we're through the lens of exclusions are narrowly construed when we're looking at these. Addressing this exclusion, State Farm argues in its brief, actually at page 15 in note 1, I'm quoting, the length of time that the insured's pipe was leaking is the dispositive issue in this case. Well, this suggestion, this interpretation ignores that the exclusion applies to loss resulting from exposure over a period of time to continuous or repeated leakage of water. That is, even if leaking continued for, everybody agrees, is a period of time. If the damage could have, if the facts are, the damage could have resulted early from the discharge volume of water, not from gradual accumulation over a period of time, then this exclusion doesn't apply. And in fact, we cite in our briefing a recent case, Central District of California, Morieri versus State Farm General Insurance Company, primarily for the purpose that their State Farm, in that case, just to be clear, identical policy, identical exclusion, language no different whatsoever. State Farm there conceded, it argued that the exclusion applies to damage from long-term water exposure. And the court, in saying that, cites to the party's brief. So, State Farm acknowledges there the exclusion applies when there's long-term water exposure. So, how does all this hook up to this case? I'm not seeing it. How's all this what, Your Honor? Hook up to this case. Well, so, here we have State Farm hired an expert, actually after it denied the claim, Mr. Carnahan, and tasked him with one question. How long did the leak last? He did not consider, did not evaluate, did not attempt to evaluate, when did loss occur to the home? And consequently, I think that has put State Farm in the position to now make the argument it's making that length, duration of the leak is a dispositive issue without even facing or confronting when did loss occur from water exposure. So, that's how it impacts this. But the loss, I mean, here you have this buckled floors, right? And at least that was part of it. Yes. It's going to occur sometime. In other words, if you have a leak for two years, there's going to be a time when the floor buckles. And so, your claim, your argument is that as long as the floor buckles, you know, on a single day, that doesn't matter if it was leaking for two years. Is that what you're saying? If I'm understanding your question, I think not. What plaintiff's position is, is that the spraying of the pressurized hot water pipe directly under the sub-flooring resulted in damage, including to wood, within two days. And other damage with, you know, staining on the walls. There's a term of art, I'm forgetting now, but basically water coming from vents inside the house over three and four days. That's our position. And that the facts support that. So is your point that that amount of time is not enough time to make it a sustained period of time? Is that what you're saying? Yes. So in other words, if your expert is right and it's 3.3 days, I think that's what he says. No, 5.3 days. Well, that's a different matter, but I'll address that in a moment. Then we would make some judgment about how many days is enough time. Is that what you're saying? Well, that leads to another issue here, which is policy ambiguity. And of course, looking at a contract provision to decide is this ambiguous or is it not, is completely dependent or very dependent upon the particular facts of the matter that is before the court. State Farm has cited a couple of cases. Well, one case, Brown v. Mid-Century, a court of appeal case. It relies upon very heavily. You'll see it cited, I think, about two different pages in its answering brief for the proposition that a period of time is not ambiguous. But there the court said merely because it's not defined, it's not ambiguous. And we're not arguing otherwise. What is much, much more relevant, salient, and important here is what about these facts? So in Brown v. Mid-Century, first of all, it wasn't even exclusion. It was the insured's burden to show that the water loss, or rather that the water was a sudden burst of water, which is not our policy language. And period of time really didn't play in the contract, have the same position as our language does in our contract. And in Brown, both sides agreed. In fact, Brown's experts said, yes, this leak lasted a period of time. But we're trying to figure out what the California courts would think of this policy, which includes the period of time language. And Brown lays out what seems on its face like a fairly intuitive understanding that, I mean, they give the examples of the dishwasher hose and the toilet and overflowing and the water heater bursting, which are all cases where you have, in a matter of minutes, a large volume of water being released. Here we have, taking your expert's view, water released over a period of multiple days. Why, even if Brown isn't precisely controlling, why isn't Brown suggestive of the California courts would say that this is on the continuous, gradual, intermittent, slow side of the line, rather than the sudden burst flood that would be covered? Well, for a few reasons, Your Honor. I think most importantly, in the Brown case, when loss occurred was not an issue because the policy wasn't written that way. The policy first says there is no water loss damage, or rather coverage. And then it goes on to say, but under the extended additional coverage, there's limited coverage for water loss. And this narrowly circumcised coverage says in Brown, only if the water results from a sudden and accidental discharge. So that was the issue. Was it a sudden and accidental discharge or not? Which is not our issue. In fact, the state foreign policy here says the opposite. Your issue is whether it occurred or developed over a period of time and was continuous, repeated, gradual, intermittent, slow, or trickling, right? Whether the loss did. Right. And so why isn't five and a half days a period of time? And I mean, I take it it was continuous over that time. Yeah. And again, that is the confusion here. Let's just go with the 5.8 days. Well, I mean, that's what your expert said, right? Yeah. I understand why you're saying that. And for purposes of, he did, yes. But I do have some more things to say about that. So to go back to your first point, which you just repeated about, that it's the loss of the property. I don't actually see that. It says we will not pay for any loss of the property described that is caused by one or more of the items below. And then one of the items below is water, meaning, and the seepage language. But that's a self-contained definition. It doesn't go back to the loss point as having to be sudden or not sudden. So I think this is responsive, but please stop me if not. So under section one, loss is not insured, which begins at ER 679. Right. Yes. You get to, number one, by the way, does have some relevance, this case, but we're not really, there's no center stage. Has the wear, tear, decay exclusion. And number one says that we'll not pay for any loss of the property described in coverage A that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually. No, the event. Actually, it says the event. Well, I was reading number one. I see, right. To contrast it with number three. Okay. Yes, we get to number three, which is applies to the seepage leakage. And it says we will not pay for any part of the loss that's caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually. Not the loss, the event. Not the loss, the event. I don't see your loss argument just seems wrong in terms of the language. So going then to what comes under number three, you get to C, which is water. And then under water, there are 10 enumerated water sources. So you have loss caused by flood, loss caused by tides, waves. You get to number nine, loss caused by seepage or leakage of water, steam or sewage that occurs or develops over a period of time. And is continuous, repeating, gradual, slow, or trickling. Now, this would seem to be contradictory to, or regardless of whether the event occurs abruptly or gradually. If in fact the loss, the seepage or leakage has to occur over a period of time. Well, the only way it's not contradictory is that the first clause refers to the event. But occurring over a period of time refers to loss. So if the loss doesn't happen over a period of long-term water exposure, then this exclusion doesn't apply. And it's a very factually intensive exclusion to tease all that out. I mean, is the idea here, like, I don't think I had appreciated that you were trying to draw distinction between, from your briefing, that you're trying to draw this distinction. Is the idea, I mean, suppose you have a gradual water trickle over the course of a year, but, you know, on day one, the trickle is enough to destroy your, you know, full-sized replica of the Venus de Milo made entirely of sugar. So you would say, well, the loss occurred suddenly, even though the, and therefore it's not covered, even though the ultimate cause of the loss was this long-term trickle. Is that the distinction you're trying to draw here? Yeah, I mean, conceding that personal property, well, is it different? But yes, I think I'm in agreement, essentially, with the way that you phrased that. So if you have, you know, an eruption of water, and let's say you have two parallel examples, same water emission from the same source, the same amount of water, and on day one or two, whatever, everybody could agree, well, it hasn't been over a period of time, there's damage, there's loss to the property. In one example, the loss, or I'm sorry, the water emission is discovered and turned off. In the other, it's not, and it continues, but for purposes of our understanding, the exclusion, we're conceding, but we know that loss happened on that day one or two. Would one be covered, not be covered? I think the only way to reasonably interpret this is loss is covered, because in both examples, the loss was not due, was not caused by seepage or leakage of water that occurs or develops over a period of time. So you put in, you have, I mean, we've discussed your expert and his assessment of how long the leak took. What is the evidence that the damage all happened, like, right at the beginning in a day? Well, not in a day, but again, the evidence is over two, three, and four days, and Mr. Gardner is the expert in his report. He sets out, first of all, he does a very careful inspection of the house, the crawl space, and finds no evidence of long-term water damage. And you get, going back to the Moriarty case that State Farms are Green, it's long, it's exposure, long time to water. That loss is excluded under number nine. But if you have loss that is occurring sooner in the emission of the water, and he explains... Well, but what counts as sooner and what counts as long-term are sort of legal questions of the I mean, he can tell us how long it took. Correct, correct. And you're saying that his view is... His view... Multiple days. Is that, and he breaks these items down that I mentioned, that two days this loss occurs, three days or four days, the loss to wood starts... You could divide the losses by when they occurred in the time frame of a leak. Divide the losses... Some would be covered, some would not be covered. In the hypothetical scenario, that's true, and that was kind of the situation in Moriarty, that you could have loss immediate, maybe if we used your painting example, Your Honor, and then you'd have losses that if the water is continuing for another 30 days that develop. We will not pay any loss that is caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually, and involves isolated or widespread damage occurs on or off the residence premises, etc. So that seems to negate exactly what you're saying, and saying that in terms of the loss, if that means the event, it doesn't matter whether it's abrupt or gradual. What matters is that the definition of water includes this limitation. So the seepage or leakage of water goes to the definition of water, not to the we will not pay language. So I just think you're... It's clever, but I don't think it works. Well, let me point this out. As you read kind of the beginning of State Farm's answering brief, where it's explaining the policy language, policy coverage, it starts out quoting the exclusion number one under which wear and tear is found, and it quotes in the brief, regardless of whether the loss occurs abruptly or gradually. Then State Farm's brief goes on to say, and there's a similar exclusion for... It goes to the water exclusion, not pointing out the change in language from... ...regardless of whether the event occurs abruptly or gradually. If this still said loss occurs abruptly or gradually, then what I'm saying would be wrong. I mean, it doesn't matter if the loss occurred sooner or later. So the event is the leak, and the loss is the water damage. The loss is the water damage, the event is the leak, correct. With that, you're well over your time. Why don't we hear what State Farm has to say, and I'll give you some rebuttal time. All right, thank you. Good morning, Your Honors. Jennifer Hoffman on behalf of Eppley State Farm General Insurance Company in support of the judgment below, which should be affirmed. Mr. Dawson raised a number of issues today, but the case turns on a narrow one. Whether a pinhole leak in a crawlspace pipe that sprayed water on a bathroom subfloor long enough to soak all of the subflooring and all of the flooring throughout an entire three-bedroom house is a covered loss under plaintiff's policy. The district court correctly found that it was not. As in Freedman, application of the continuous leakage exclusion to the undisputed facts of this case is in no way unclear. There is no dispute that the water leaked from a hole in a crawlspace pipe that was at its largest the size of a tip of a pen. There is no dispute that nearly 40,000 gallons of water escaped the pipe during the course of the leak. Seems incredible that you can get out of that hole either one or two gallons a minute. A minute, is that what they've said? I believe that is what the plumber said, Your Honor. The engineer also had an estimate that was more conservative than the plumber's estimate. Based on his estimate, he estimated that the leak lasted between 13.3 days and up to 42 days. I thought the smallest estimate was a gallon a minute. A gallon a minute seems strange. You can get a gallon a minute out of this size. I would suggest 40,000 minutes. The water did leak slowly enough that there was no pooling or flooding reported on the property. That impacts also how fast the water was coming out. The last undisputed fact is that there's no dispute that it soaked all of the subflooring and traveled up to soak all of the flooring throughout the entire house. And according to plaintiff's own evidence, the house had absorbed so much water over the course of the leak that the floors in other rooms were buckling and the walls were crying. How did they not notice it before then? Before the day that they noticed it, if that's all true? I don't know the answer to that, Your Honor. And what is the rationale for this exclusion? The rationale for this exclusion is that this is a homeowner's policy and not a maintenance policy. Homeowner's policies cover fire. They do not cover water except in very limited circumstances. So this continuous leakage exclusion at issue here is the ninth type of water loss excluded. The policy describes in great detail various types of water events that are not covered, which leave, as Judge Miller observed, the rather intuitive types of sudden abrupt losses that would be covered like a leaking or an overflowing toilet or a water hose that breaks mid-cycle in a dishwasher. Those types of sudden and abrupt losses that homeowners cannot protect for or anticipate, those would be covered under this policy. These types of continuous leak losses are not. And the court was correct to question the new claim about the exclusion applying depending on the length of damage and not how long the injury-inducing event happened. The policy's plain language reflects the issue is not whether there was gradual water damage over time. The issue is whether the damage-inducing event was a leak that lasted over a period of time and was continuous or gradual as opposed to sudden or abrupt. And that's from the plain language of the policy. The district court also properly exercised its discretion in denying plaintiffs Rule 56D requests below. They could have properly done that outright because they failed to satisfy the rule, but the court gave them a second chance and explicit instructions and they still failed to comply. Instead, they used the opportunity to provide further briefing in support of the MSJ, which the district court also considered even though it did not have to. And the two items of discovery argued in their briefing but not raised today would not have changed the summary judgment result in any event. The district court went far beyond what it had to do to give plaintiffs more than a fair opportunity to oppose summary judgment and this court should affirm. I'd like to address, unless the court has questions, I'd like to address a few things raised on reply. First, on reply, Mr. Dawson argued that State Farm is attempting to impose a bright line rule and that the number of days here is dispositive. In fact, the opposite is true. Plaintiffs are trying to impose an arbitrary bright line number of days rule. They mischaracterized the district court's reasoning as focused on the number of days, but the district court didn't focus on the number of days nor should it have. It focused on the type of loss, a consistent leak of this type. The type of loss or the type of what are... The type of injury-inducing event that caused this loss. And like the Freedman court found for a pen-tipped size leak to have caused the extent of damage here to have soaked the house entirely, it was a continuous leak subject to the exclusion and plaintiffs concede that the Freedman exclusion is analogous to that here. In Freedman, the damage at issue there was limited to a bathroom wall and the ceiling below and the court there found it must have lasted a sufficiently long time to count as continuous or repeated under any reasonable construction of those terms. Here, it's undisputed that the entire house was soaked as a result of this leak. What about the argument he made here about loss? That that's the loss that has to be said, not the water leakage. The loss, if the loss results from an excluded event, it is not covered. And the excluded event here is under sub 9 of the water exclusion. The seepage or leakage of water, steam, or sewage that occurs or develops over a period of time and is continuous, repeated, gradual, intermittent, slow, or trickling. So if the loss reported results from that event, it is excluded. But there is sort of an internal contradiction because the introductory language says it doesn't matter whether it's gradual or sudden. The introductory language, yes, applies to a number of different exclusions. That's true. And a number of different situations. It's true, but it's generic and it covers all of them. And it says, regardless of whether the event occurs abruptly or gradually, involves isolated or widespread damage, etc. And then this event is apparently defined in terms as you're construing it, as to whether it's sudden or gradual. So there does seem to be a contradiction there. The exclusion explains that what matters for coverage is not the length of time that the water took to damage the property, but it's the length of time that the water leaked. And what's the event? Is the event the leak? Yes. All right. So then it says the introductory language says regardless of whether the, let's put it, occurs abruptly or gradually. So that seems to contradict the notion that the leak has to be continuous, repeating, gradual, etc. And not abrupt. The introductory language, again, applies to a number of different excluded events. But including this one, including this one. Including this one. And that would say, if that would apply, Steve Arndt is not suggesting that a sudden water event would not be covered. And the loss, the time that the water leaked is the important event here. But even disregarding that and focusing on the new claim that it's the time that the damage took to develop, according to plaintiff's own expert, which was in the record below, notwithstanding State Farm's objections, according to him, it took at least three to four days for the floors to buckle. That's still multiple days. That's still something resulting from a continuous or repeated seepage or leakage. So if, I mean, sticking with plaintiff's expert's chronology of five days, if the hole had been five times larger and so this all happened in one day, would that be covered? It depends on the nature of the leak and the event and how long. Well, suppose everything is the same as in this case, except the hole, the flow rate is five times bigger. So same amount of water but over the space of one day and then they find it and turn it off. All the same damage. Which side is that on? In one day? Yeah. It could still apply depending on how that leak developed and occurred. Well, how do you define period of time? A period of time, you look to the Brown decision there and the Brown decision said that it has a, in the context of running water, the policy's use of the term is plain and clear. It has a well-established meaning in the context of running water. So if you have a period of time here, at least three to four days, is what the plaintiff's own expert is saying it took for the damage to manifest, 5.8 days for this leak to occur. That's certainly a period of time under any reasonable construction of those terms. One second is a period of time, so it's not very informative. Well, and the Brown court addressed that. The Brown court has said that certainly if you get down to quantum mechanics, there would be a nanosecond where at one point in time the pipe was not leaking and at another point in time it was. And with respect, there's nothing in the record that this lasted for one day or even two days at the least, according to their experts' manifestation of loss statements, it was three days. According to his duration opinion, it was 5.8 days. But on that record, that would certainly qualify as a period of time under any reasonable construction. Apparently the insured didn't know until they saw the floor buckle. That's the claim. Right. So that is when they saw the loss. The loss manifested itself. Insured claims that they discovered it when the floor buckled. Yes. And there's no reason to doubt that. I mean, they certainly got on it pretty quick. No, Your Honor, there's no reason to doubt that. That floor that buckled was in a different room from where the leak occurred. And so that water traveled from the pipe to the subfloor in the room where the leak occurred onto the adjacent rooms. It traveled up through the flooring and then buckled. All of those things had to happen for that damage to be manifest. So in the time it took for that to happen, that was a continuous or repeated sequence. And there was no water on the floor of the house? No, Your Honor. There was no water on the floor of the house and there was no water observed as pooling or flooding underneath the house either. So it was all due to steam or something? It was due to either steam or to the water traveling from the point of the subfloor around to the rest of the of the home. But the water, the home had absorbed so much water. It is undisputed that the entire subflooring and the entire flooring throughout the house was soaked. The insured's own evidence shows that the walls were crying and the floors were buckling. And this is not the type of sudden, abrupt event as in Brown, like a overflowing toilet or a water hose breaking mid-cycle that is covered under this type of policy. Well, you can have that kind of damage from a flood of a house, but there was no water on the floor here. But if there were, you could certainly have that kind of damage. This was not a flood of the house, correct, Your Honor? And I'd like to just point to two more points. Mr. Dawson conceded the estimated duration from their own expert was at least 5.8 days. And in their opening brief, they claimed that the only sign of long-term damage was the buckling of floors. And that's at page 21 of their opening brief. So that would contrast this type of event with a sudden, abrupt event that could potentially be covered. I'd also like to add that in their reply, they cite for the first time the Qualcomm case, that if policy language has been judicially construed, it's unambiguous. They cite that, I'm sorry, to urge departure from that rule. Qualcomm, in fact, rejected the ambiguity argument and applied the plain language of the policy there. It recounted an expectation of coverage cannot create ambiguity, which is what the plaintiffs are arguing here. And it recounted that policy language has to be assessed based on the nature of the policy, which here is a homeowner's policy, not a maintenance policy. It covers fire and largely excludes water. Qualcomm did not follow an out-of-state case that did not apply California rules of construction, but instead interpreted policy language based on policy considerations and not on the plain meaning of the policy at issue. Here, plaintiffs have offered no conflicting California authority on what a period of time or continuous means in the context of running water. To the contrary, their authority supports it as unambiguous. And I would point the court to the Gershkowitz case. Well, it certainly is ambiguous. I mean, you can't say it's unambiguous. We can't tell whether a period of time is one day, five days, ten days, who knows? Under the Gershkowitz... I don't know what the consequence of that is, but it certainly appears to be hard to pin down. That is correct. There is no bright line rule, Your Honor. That would be an arbitrary bright line rule in State Farm's view. The Gershkowitz case that plaintiffs rely on in their opening and reply brief recounted that the only reasonable construction of continuous or repeated and the exclusion at issue there is that the language is clearly intended to refer to the difference in coverage between a sudden and a gradual leak. And that's consistent with Brown, consistent with Friedman. On a different record in that case... Even that doesn't make a lot of sense because any leak is sudden when it starts. I mean, one minute it's there and the next minute it's not. So, or the other way around. So, it suddenly starts. Of course. And if a leak is caught immediately, it wouldn't cause damage or it certainly would not cause the extent of damage that was reported here. And finally, I'd point the Court to the undisputed evidence regarding the extent of the water in the home. At one point on reply, plaintiffs argued that Ms. Mojica suggested that meter readings were in the 20s. That's not correct. Ms. Mojica said that Mr. Rojas told them how the meter worked and that if it registered in the 20s, that would show that there was moisture present. She said that he said there was moisture throughout the house. Mr. Aranda similarly said that Mr. Rojas told him that the readings were high in the walls of the house. And that's consistent with plaintiff's own evidence showing the walls crying. Mr. Rojas testified at two excerpts of record 292 to 294. He initially said that the moisture readings were 99.9% and he reaffirmed that after additional questioning. If there are no further questions, Your Honor, I appreciate your time. All right. Thank you very much. Mr. Dawson, I'll give you another minute. Go on. Thank you, Your Honor. In terms of factual disputes, a very, well actually it shouldn't be a dispute, but an important fact that is in the record and we didn't address it in the brief. State Farm says they talk a lot about the water saturated the entire house as evidence of therefore it went on for a long time. The fact is the house is 1200 square feet and the crawl space goes under the entire house. Pressurized hot water was spraying directly on the subflooring. So the fact that, you know, it impacted the entire house is not all that shocking. State Farm says in its answering brief that the house was 2000 square feet, citing Mr. Rojas from Service Master. But Mr. Rojas, and again, these are in the excerpts of record looking at his deposition, he didn't measure the house. The only thing he had were photographs. He talks about he normally would use a software program where he does measurements, didn't use it. Whereas the 1200 feet. So what difference does this make? I'm sorry? What difference does this make? Well, the implication is I'm reading State Farm's argument is, well, this leak must have gone on for quite some period of time because it affected every part of the house. Right. And a 1200 square foot house is still a sizable house that would take some time to soak the  About half the size of what they're saying is what I'm pointing out. And again, this isn't a dripping water line. It's a pressurized hot water line that the plumber saw spraying directly onto the subfloor. Talking about the Freedman versus State Farm, which does have the same policy language. For one thing, the Freedman court pointed out that regardless of whether the event occurs suddenly or gradually doesn't matter here. And that was in response to a plaintiff's argument that, well, the pipe didn't leak because of normal deterioration. And of course, it doesn't matter. Read the policy language, what caused it. Also, in that case, it was a nail that went through a pipe years before when houses being remodeled and your finger could go through the drywall and affected every floor of the  house. Factually, it was very, very distinct. In response to the question, what's the rationale? Council said, well, the policy only covers water in very limited circumstances. That's the mid-century policy, a very limited peril coverage. This policy is all risk, and water was not carved out from all risk. If you have only a narrowly circumscribed coverage, as the answer suggested, then you get out from under the California Supreme Court decision of McKinnon versus Truck Insurance Exchange of those rules of construction that are really very severe for the insurance carrier when evaluating an exclusion like this. So I just wanted to point that out. And in terms of period of time, what does it mean? I mentioned in the reply brief that every other place in the policy where time is referenced, it's qualified, quantified, or specified, except for this one. In fact, under loss of use is the only other place I could find the phrase period of time. And there, it was referenced in connection with 14 days. So looking at the Legacy Vulcan case we cite, where there's a similar situation dealing with a duty to defend, and what did underlying insurance mean? And the court said, well, in this part of the policy, you use the phrase, and you point to Schedule A, which mentions a very specific policy. But in this part of the policy, you use underlying insurance, and you don't reference it to anything else. So it has to be considered a generic term. We've got to decide what its underlying insurance mean. As a generic term, it could mean what... So what is the consequence of this argument? So the consequence that the court reached there... Are you asking us to say that it's ambiguous and therefore invalid, or what? Well... Exactly. So... That would mean... I've given this a lot of thought, and I feel I don't have a satisfactory answer to myself. If you read the case law, it is pretty clear if you decide, okay, this party says period of time can mean a day. Okay, it could, under period of time. It's not defined. It's not qualified. This party says, well, hold up. Period of time, start reading different definitions, suggests some passage of time. That's reasonable, too. Therefore, it's ambiguous, and therefore, it's construed against the insured and consistent with the... I'm sorry, against the insurer, and consistent with the insured's reasonable, objective expectations of coverage. Under McKinnon, the reasonable, objective expectations of coverage is what's in the insuring agreement, the all-risk agreement, which is water damage is covered. I thought State Farm's answer would be, when I asked what the rationale is, it would be in terms of the burden on the homeowner to discover the damage. I mean, so the first day something's damaged, that would be covered, because that's not a period of time. But by day 14, say, the homeowner should have a duty to discover, there should be a burden to discover the damage, as sort of a mitigation theory, and limit the damage. And so by that day, it would be a period of time. And that's similar to the facts of both Brown versus MidCentury and Friedman versus State Farm. In the Brown case, the insured said, well, we would notice condensation on our windows, we'd wipe them off, and the next day it was back. And we noticed water condensation on the walls, we'd wipe it off, and the next day it's back. 30 days later, they started trying to figure out, where's the water coming from? And eventually found, the insured's brother went into the crawl space and found that there was water leaking. And so the insured agreed that the water had been going at least one, if not two months, in the Brown case. And in Friedman, much longer. Okay, Council, unless you have any other questions? Vice President, any other questions?  Okay. All right, thank you. You've reached your time, yes. Mojica versus State Farm will be submitted. We've previously submitted Sedell versus United States, and this session of the court is adjourned for today. Thank you, Council. All rise. This court for this session stands adjourned.
judges: WARDLAW, BERZON, MILLER